```
UNITED STATES OF AMERICA,    )
                             )
               Plaintiff,    )
                             )
     v.                      )
                             )          No. CR-06-346-DLJ
JOSHUA HEDLUND,              )
                             )          ORDER
               Defendant.    )
_____)
```

On February 4, 2008 Joshua Hedlund entered a plea of guilty to one count of the Use of Property for the Purposes of Manufacturing Marijuana in violation of 21 U.S.C. § 856(a)(1), and to one count of Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). In the Plea Agreement, Hedlund admitted that from mid-2003 to March 2006 he had allowed others to use the warehouse at 809 Allston Way in Berkeley to cultivate marijuana. He also admitted that in February 2004 he had received money, which was the proceeds of the marijuana cultivation, and had deposited a portion of this money, $1947.42, into a Bank of America account as a mortgage payment on the warehouse. He is now before the Court for sentencing on these convictions. On June 2, 2008 the U.S. Supreme Court decided United States v. Santos, __ U.S. __, 128 S. Ct. 2020 (2008) which raises a question as to whether the conduct underlying the money laundering count continues to be unlawful. Following the decision the Court ordered the parties to submit briefs on the impact of Santos on this proceeding. That has been done and the parties have argued the matter before the Court. At the hearing the Court stated that, as a result of the Santos decision, the plea of guilty to the money laundering

charge must be vacated.  This order memorializes and explains that decision.

## I. THE SANTOS DECISION

The defendant argues that after <u>Santos</u> the money laundering count must be dismissed, as the factual basis for his plea does not establish that the financial transaction, underlying the money laundering violation, involved "proceeds" which were "profits."  The Money Laundering statute, 18 U.S.C. § 1956(a)(1)(A)(i), prohibits the conduct of a financial transaction involving the "proceeds" of a specified unlawful activity (SUA).  The unlawful activities covered in the statute are listed at § 1956(c)(7) and included the marijuana cultivation offense charged in this indictment.

The defendant in <u>Santos</u> had been convicted in the Northern District of Indiana of money laundering in violation of § 1956(a)(1)(A)(i), by making payments to winning bettors, taking commissions from bets made, and paying the salaries of bet collectors as part of an illegal gambling enterprise. <u>Santos</u>, 128 S. Ct. at 2022-23.  That conviction was affirmed on direct appeal, but was set aside on collateral attack under 28 U.S.C. § 2255 on the basis of a subsequent decision of the Seventh Circuit in <u>United States v. Scialabba</u>, 282 F.3d 475 (2002).  <u>Santos</u>, 128 S. Ct. at 2023.  In <u>Scialabba</u> the Seventh Circuit found that the term "proceeds" in § 1956(a)(1)(A)(i) applies only to criminal profits and not to criminal gross receipts.  <u>Scialabba</u>, 282 F.3d at 478.  The District Court hearing Santos' § 2255 Petition found that there was no

evidence that the payments made by him (to winners, runners, and collectors) came from profits as opposed to gross receipts, and reversed the convictions. Santos, 128 S. Ct. at 2023. The Seventh Circuit affirmed this decision and the U.S. Supreme Court decision in Santos affirms the Seventh Circuit. Id.

There is no majority opinion in Santos. There are two four Justice opinions, one authored by Justice Scalia and the other by Justice Alito, reaching opposite conclusions. Justice Stevens' concurrence with the opinion by Justice Scalia makes that opinion the plurality and the Justice Alito opinion the dissent.

A.   PLURALITY

Justice Scalia explains that the money laundering statute, § 1956(a)(1))A)(i), uses the term "proceeds" but does not define it. Santos, 128 S. Ct. at 2024 (plurality opinion). He further explains that this term can mean either "profits" or "receipts". Id. After considering the context in which the statute was enacted, Justice Scalia concludes that the term is ambiguous and that the venerable rule of lenity for criminal laws requires that in such circumstances the term must be interpreted in favor of the defendant. Id. at 2024-25. He then concludes that inasmuch as the "profits" definition of "proceeds" will always be more defendant-friendly than the "receipts" definition, that the rule of lenity dictates that this definition should be adopted. Id. at 2025.

3

### B. DISSENT

Justice Alito concedes that "proceeds" can mean either "net profit" or "the total amount brought in," but also finds that in such circumstances the Court is required to ask what the term "proceeds" means in the relevant context--use in a money laundering statute. Id. at 2035 (Alito, J., dissenting). Upon review of that context he concludes that the term is not ambiguous, that the rule of lenity need not be invoked, and that the term "proceeds" as used in § 1956(a)(1)(A)(i) is not limited to "profits." Id. at 2036.

### C. CONCURRENCE

As already noted, Justice Stevens concurs in the judgment reached by Justice Scalia, with the result that the Seventh Circuit decision is affirmed and the money laundering conviction of defendant Santos is reversed. As a general rule on decisions such as this the stare decisis effect is determined by limiting the holding of the Court to the narrower ground stated in the concurring opinion. See Marks v. U.S., 430 U.S. 188 (1978). It is necessary, then, to examine Justice Stevens' opinion with a sort of heightened scrutiny to see what narrow ground was agreed upon, or, if in fact there was any agreement at all.

#### 1. Legislative History

Money laundering offenses involve the use of the "proceeds" of "specified unlawful activity" (SUA). All told

4

there are approximately 250 of such predicate offense SUAs. See 18 U.S.C. § 1956(c)(7). Justice Stevens finds that there is simply a lack of any legislative history speaking to the definition of "proceeds" when the SUA is the conduct of unlawful gambling. Santos, 128 S. Ct. at 2032 (Stevens, J., concurring). On the other hand, he agrees with Justice Alito that the legislative history makes it clear that "proceeds" includes all gross receipts when the SUA involves "the sale of contraband and the operation of organized crime syndicates involving such sales." Id. Justice Stevens finds that "... I cannot agree with the plurality that the rule of lenity must apply to the definition of "proceeds" for these types of unlawful activities." Id. at 2032 n.3. It seems clear to this Court that the contraband sales type of SUA described by Justice Stevens would include all offenses related to drug trafficking, including the marijuana cultivation offense defendant Hedlund has pleaded guilty to. In its Santos decision, then, five of the Justices have opined that Congress intended to include the gross receipts from drug trafficking offenses in the term "proceeds." Id. at 2029, 2032.

   2.   Merger

There is a good deal of discussion in Santos about a "merger problem." Id. at 2026-27. The problem lies in the fact that it is often the case that the same underlying conduct can constitute an offense under both the substantive SUA offense involved and the money laundering statute. Id. For example, when Santos paid off a bettor, that payment violated

both the gambling statute and the money laundering statute. Id. at 2026. The real problem is not this definitional overlap, but that the penalties provided are frequently significantly different. Id. at 2031-32. In the Santos case, as an example, the statutory maximum is five years for the gambling offense and 20 years for the money laundering offense. Id. In fact Santos was sentenced to 60 months for the gambling offense and to 210 months for the money laundering offense even though the underlying conduct could support a conviction under either statute. Id. at 2023. This unexplained radical increase in punishment for the same underlying conduct that is embodied in both the substantive offense and in the subsequently enacted money laundering statute, and the arguably excessive grant of prosecutorial discretion that it entails, appears to disturb all the Justices, as it certainly did Justice Stevens. Justice Stevens opines that the consequence of applying a "gross receipts" definition to Santos' gambling operation is "so perverse" that in his opinion it could not have been contemplated by Congress. Id. at 2032 (Stevens, J., concurring). On the other hand, Justice Stevens states that in a different circumstance where the application of the statute does not involve such a "perverse" result he would presume the legislative history described by Justice Alito would reflect a different Congressional intent. Id. In Hedlund's case, the penalties for the marijuana offense and the money laundering offense are not substantially different. This seems to support an arguable conclusion that Justice Stevens' opinion can be

said to hold that "proceeds" includes "gross receipts" in the money laundering offense committed by Hedlund. Cf id.

### 3. Stare Decisis

Justice Scalia undertakes to describe the stare decisis effect of Justice Stevens' opinion as limiting the holding of the judgment entered to the narrow ground that "proceeds" means "profits" when there is no legislative history to the contrary. Santos, 128 S. Ct. at 2031 (plurality opinion). Justice Stevens says, "That is not correct." Id. at 2034 n.7 (Stevens, J., concurring). Justice Stevens describes the grounds of his decision as including the lack of legislative history and his conclusion that Congress could not have intended the "perverse" result caused by the "merger problem" that is produced by Justice Alito's opinion. Id. He concludes that when both circumstances are considered, the rule of lenity may be of weight; that the plurality opinion is persuasive; and that he concurs in its judgment. Id. at 2034.

### 4. Clark v. Martinez

The result of Justice Stevens' opinion is that the term "proceeds" in § 1956(a)(1)(A)(i) has different meanings for different predicate SUAs. Id. at 2031-32. In gambling cases it means "profits", in drug trafficking cases it means "receipts." Id. He acknowledges this result in his statement that, "... (it is) my view that "proceeds" need not be given the same definition when applied to each of the numerous specified unlawful activities that produce unclean money." Id. at 2034 n.7. Justice Scalia emphatically disagrees with this

7

thesis. Id. at 2030 (plurality opinion). He describes Justice Stevens' position as "original with him," as an "interpretive contortion," and that, "it has no precedent in our cases." Id. Justice Scalia points out that just three years ago the Supreme Court held in its Clark v. Martinez decision that "the meaning of words in a statute cannot change with the statute's application." Id. In his Santos opinion Justice Scalia writes:

> "Clark v. Martinez, 543 U.S. 371, 125 S. Ct. 716, 160 L.Ed.2d 734 (2005), held that the meaning of words in a statute cannot change with the statute's application. See id., at 378, 125 S. Ct. 716. To hold otherwise "would render every statute a chameleon," id., at 382, 125 S. Ct. 716, and "would establish within our jurisprudence ... the dangerous principle that judges can give the same statutory text different meanings in different cases," id., at 386, 125 S. Ct. 716. Precisely to avoid that result, our cases often "give a Statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation. *The lowest common denominator, as it were, must govern.*" Id., at 380, 125 S. Ct. 716 (emphasis added).

Id.

In Clark v. Martinez the Supreme Court considered the interpretation of the words "may be detained" in 8 U.S.C. § 1231(a)(6), a statute dealing with alien detention. 543 U.S. at 378. By its terms the statute covers three categories of aliens:

1. Those who are inadmissible under 8 USC §1182
2. Those who are admissible but removable under 8 USC §1227(a)
3. Those found to be flight or community risks.

Id. at 377.

8

In a case decided before Clark v. Martinez, Zadvydas v. Davis, 533 U.S. 678 (2002), the Supreme Court found that, as to the aliens in category 2, the words of the statute did not mean indefinite periods of detention but rather a period of detention limited to the time "reasonably necessary" to carry out removal. Zadvydas, 533 U.S. at 689. In Clark v. Martinez the alien had come to the United States in the Mariel boat lift, had committed violent felonies, and was an inadmissible alien as defined by category 1. 543 U.S. at 374-75.

The Supreme Court found that the Zadvydas interpretation of the statute must be applied to Martinez, finding that the same interpretation of the words of the statute must apply to both categories of aliens. Id. at 378.

Justice Alito in Santos also disagrees with Justice Stevens, stating "... and contrary to the approach taken by Justice Stevens, I do not see how the meaning of the term "proceeds" can vary depending on the nature of the illegal activity that produced the laundered funds." Santos, 128 S. Ct. at 2044 (Alito, J., dissenting).

Justice Stevens concurred in Clark v. Martinez, but opines that it can be distinguished from the Santos case, arguing, "... in Martinez there was no compelling reason -- in stark contrast to the situation here -- to believe that Congress intended the result for which the Government argued." Santos, 128 S. Ct. at 2034 n.7 (Stevens, J., concurring). This argument--that the penalty for money laundering, when the SUA is a gambling offense, is so perverse that it compels one to

reason that Congress did not intend the word "proceeds" to include all "receipts" derived from this offense--was not joined by any other Justice. See id. at 2021.

In his discussion about stare decisis, Justice Scalia observes:

> ... Counsel remain free to argue Justice Stevens' view (and to explain why it does not overrule Clark v. Martinez, supra.) They should be warned, however, not only do the Justices joining this opinion reject these views, but so also (apparently) do the Justices joining the principal dissent.

Id. at 2031 (plurality opinion).

## II. DISCUSSION

The conviction of defendant Santos was vacated by the District Court hearing his § 2255 collateral attack, because there was no evidence that the transactions on which the money laundering convictions were based involved profits, as opposed to receipts, of the illegal activity. In the case before the Court, the factual basis for the money laundering conviction is that Hedlund used a portion of the proceeds from the marijuana grow to make a mortgage payment on the building used to grow the marijuana. Under any accounting system such a mortgage payment is a business expense, it is not a part of the profits of the business. If the Santos rule -- that the word "proceeds" in 18 U.S.C. § 1956(a)(1)(A)(i) is limited to the profits of the illegal activity -- applies to the Hedlund case, then the financial transaction in Hedlund does not involve the

10

profits of the illegal activity and the money laundering conviction must be vacated.

The government argues that the Santos rule applies only where the predicate SUA is a gambling offense. The argument asserts that there is no single rationale which explains the Santos result. The rationale of the plurality -- that the word "proceeds" in the statue must mean profits -- is inconsistent with the rationale of the concurring opinion -- that the words can have different meanings as applied to different SUAs. The government then argues that in such cases the Marks rule (supra) cannot be applied, as there is no common denominator for the Court's reasoning, and that, "[i]n such a case . . . the only binding aspect of a splintered decision is its specific result," citing Anker Energy Corp. v. Consol. Coal Co., 177 F.3d 161 (3d Cir. 1999). The government then finally argues that the specific result of Santos is that "proceeds" means "net profits" only where the underlying SUA is illegal gambling, with the further result that, consistent with the view of five of the Justices, in a case involving contraband (such as drugs) sales, "proceeds" should be read to mean "gross receipts."

This Court cannot accept the government's argument. It does not confront Clark v. Martinez, and its consideration in Santos. The government appears to be correct that Santos does not have a common denominator and that the Court should view its stare decisis effect as limited to the specific result. And the government is correct that five of the Justices said

11

that Congress intended that "proceeds" should mean "gross receipts" in drug trafficking cases. But the bottom line is that five Justices said that, but they did not vote that. The specific result of Santos is that five Justices voted that "proceeds" means "profits" in 18 U.S.C. § 1956(a)(1)(A)(i). This decision came about in a case where the SUA was gambling, but the Supreme Court did not hold that their decision applied "only" to gambling cases. To the contrary, Justice Scalia made it very clear that this decision was not to be read as permitting the word "proceeds" to be given different meanings for different applications of the statute. Justice Scalia's discussion of Clark v. Martinez cannot be read in any other way. Justice Alito agreed with this position, specifically stating that he did not "see how the meaning of the term 'proceeds' can vary depending on the nature of the illegal activity that produced the laundered funds." Santos, 128 S. Ct. at 2044 (Alito, J., dissenting). There is an interesting subtext in this issue. Justice Thomas, a member of the plurality, declined to join Part IV of the Santos plurality opinion. Part IV is the part that includes the entire discussion of the Clark v. Martinez issue. Justice Thomas dissented in Clark v. Martinez. It appears to this Court that he is declining to join Part IV in Santos because he is maintaining his dissent in Clark v. Martinez, with the further unstated premise that seven of the Justices believe that Clark v. Martinez is still good law. In any event, it is beyond doubt that Clark v. Martinez is not reversed by Santos.

1   The result of this analysis is that this Court believes
2   that the Supreme Court in Santos has held that the word
3   "proceeds" in 18 U.S.C. § 1956(a)(1)(A)(I) means "profits," and
4   that Clark v. Martinez requires that this meaning must apply to
5   every SUA listed in the statute. The further result is that
6   the money laundering conviction of defendant Hedlund must be
7   set aside.
8   IT IS SO ORDERED

10  Dated:    September 9, 2008

        _____
        D. Lowell Jensen
        United States District Judge

United States District Court
For the Northern District of California

13